Slip Op.04-158

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                                   :
VIRAJ FORGINGS, LTD.,                              :
                                                   :
                 Plaintiff,                        :
                                                   :
                                                   :          Before:  WALLACH, Judge
        v.                                         :          Court No. 01-00889
                                                   :
UNITED STATES,                                     :
                                                   :
                 Defendant.                        :
                                                   :
_____:

[United States Department of Commerce's Remand Redetermination is Partially Remanded]

                                                          Dated: December 9, 2004

Miller & Chevalier Chartered, (Peter Koenig, and Jeffrey C. Lowe) for Plaintiff.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson, Deputy Director; Stephen C. Tosini, Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch; and James K. Lockett, Senior Attorney-Advisor, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of Counsel, for Defendant.


**OPINION**

**Wallach, Judge:**

**I**
**Introduction**

        This matter comes before the court following the court's remand of September 3, 2003, to

the United States Department of Commerce ("the Department" or "Commerce").  In Viraj

Forgings, Ltd. v. United States, 283 F. Supp. 2d 1335 (CIT 2003) ("Viraj I"), the court remanded

Commerce's findings in Certain Stainless Steel Flanges from India; Final Results of

Antidumping Duty Administrative Review, 66 Fed. Reg. 48,244 (Sept. 19, 2001) ("Final

Results").[1]  On December 19, 2003, Commerce filed its Results of Redetermination Pursuant to Court Remand Certain Forged Stainless Steel Sheet Flanges from India ("Remand Redetermination").  Plaintiff, Viraj Forgings, Ltd. ("Plaintiff" or "Viraj"), filed Objections to the Remand Decision of the U.S. Department of Commerce ("Plaintiff's Objection").  For the reasons set forth below, Commerce's Remand Redetermination is affirmed in part and remanded in part..  This court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2000).

**II**
**Background**

Plaintiff is an Indian manufacturer of stainless steel flanges.[2]  In 2000, Commerce initiated an antidumping duty administrative review on certain forged stainless steel flanges from India for the period of February 1, 1999, through January 31, 2000. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 65 Fed. Reg. 16,875 (Mar. 30, 2000).

Commerce preliminarily determined that Plaintiff's dumping margin was 21.10 percent. Certain Forged Stainless Steel Flanges From India; Preliminary Results of Antidumping Duty Administrative Review, 66 Fed. Reg. 14,127, 14,130 (Mar. 9, 2001) ("Preliminary Results").  On September 19, 2001, Commerce published the Final Results containing the weighted-average dumping margin for the firms under review, which adopted the 21.10 percent dumping margin from the preliminary determination for Viraj.[3] Final Results, 66 Fed. Reg. at 48,245.  The

---

[1] Familiarity with the court's decision in Viraj I is presumed.

[2] Commerce published the antidumping duty order for stainless steel flanges from India in Amended Final Determination and Antidumping Order; Certain Forged Stainless Steel Flanges from India, 59 Fed. Reg. 5,994 (Feb. 9, 1994).

[3] See generally Memorandum from Joseph A. Spetrini, Deputy Assistant Secretary AD/CVD Enforcement Group III, to Faryar Shirzad, Assistant Secretary for Import

2

administrative review covered "certain forged stainless steel flanges from India, both finished and not-finished," and included five general types of flanges that generally matched the American Society for Testing and Materials ("ASTM") specification A-182. Id. at 48,244. Plaintiff challenged Commerce's determination and the court ordered a remand.

In Viraj I, the court ordered Commerce to (1) rationally articulate the basis for its departure from previous practice or to provide adequate evidence to support its claim of factual distinction in selecting Germany as the comparison market; (2) adequately explain its departure from precedent in comparing ASTM standard flanges with the German Deutches Institut für Normung e.V. ("DIN") standard flanges; (3) explain its reasoning for converting reported prices to a per-kilogram basis when this was contrary to Commerce's precedent or to conform itself to prior precedent; and (4) adequately explain its claim that the comparison of rough forgings to finished flanges were "similar merchandise" and that any differences were "insignificant." Viraj I, 283 F. Supp. 2d at 1344-57.

On December 19, 2003, Commerce filed its Remand Redetermination stating that (1) it maintains that Germany is the most appropriate third country comparison market and that this selection was not contrary to its regulation or prior precedent; (2) it finds that the comparison of ASTM standard flanges to DIN standard flanges was consistent with the statute, regulations, and Commerce's precedent; (3) it determines that the use of the per-kilogram comparison approach is consistent with Commerce's practice and precedent; and (4) it maintains that comparing rough flanges to finished flanges, when no other comparisons are available, was consistent with the

Administration, Issues and Decision Memorandum for the Final Results in the Antidumping Duty Administrative of Certain Stainless Steel Flanges from India (Sept. 19, 2001).

3

statute, Commerce's regulations, and practice. Remand Redetermination at 13-26.

### III
### Arguments

Plaintiff claims that Commerce's continued use of Germany as the comparison market fails to satisfy the statutory "foreign like product" requirements for comparison markets and Commerce's own regulations on the selection of a third-country market. It argues that the use of Germany as the comparison market is unsupported by substantial evidence, is not in accordance with the law, and is an impermissible and unexplained departure from past precedent. Plaintiff states that Commerce's argument that DIN and ASTM flanges may be compared is unsupported by substantial evidence and is not in accordance with law. It further claims that since flanges are not commercially sold on a per-kilogram basis, Commerce's use of per-kilogram pricing is neither supported by substantial evidence nor in accordance with the law. Finally, Plaintiff argues that Commerce's decision that rough forgings are comparable to proof-machined or fully-machined (finished) flanges remains unsupported by substantial evidence and is otherwise not in accordance with the law.

Defendant claims that Commerce's selection of Germany as the comparison market complies with the court's decision in Viraj I. It claims that Commerce followed Viraj I to determine that flanges manufactured to DIN and ASTM standards are like product. Furthermore, Defendant argues that the use of per-kilogram price and cost comparisons was reasonable and consistent with agency practice and that Commerce made appropriate adjustments when comparing rough to finished flanges.

4

## IV
## Applicable Legal Standard

The court will uphold Commerce's determinations unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477, 71 S. Ct. 456, 95 L. Ed. 456 (1951) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 299, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). Under this standard, the court does not weigh the evidence nor will it substitute its own judgment for that of the agency. See Negev Phosphates, Ltd. v. United States, 12 CIT 1074, 1076-77 (1988). However, the court's deference cannot allow the agency to deviate from the clear intent of Congress. See Rhone-Poulenc, Inc. v. United States, 20 CIT 573, 574-75 (1996) (citing Bd. of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp., 474 U.S. 361, 368, 106 S. Ct. 681, 686, 88 L. Ed. 2d 691 (1986)).

The court has found Commerce's results unlawful in instances where Commerce has failed to carry out its duties properly, relied on inadequate facts or reasoning, or failed to provide an adequate basis for its conclusions. See Budd Co. Ry. Div. v. United States, 1 CIT 67, 70-76 (1980); Indus. Fasteners Group v. United States, 2 CIT 181, 190 (1981). In order for Commerce's redetermination to be sustained, it must be reasonable, supported by the record as a whole, and the grounds that the administrative agency acted upon clearly disclosed. See Atlantic Sugar, Ltd. v. United States, 744 F.2d 1556, 1563 (Fed. Cir. 1984).

5

**V**
**Discussion**

**A**
**Commerce's Selection of Germany as the Third Country Comparison Market is Not in Accordance with the Law**

In Viraj I, this court instructed Commerce to "rationally articulate the basis for its departure from its previous practice or provide adequate evidence to support its claim of a factual distinction" to provide further evidence that Germany was the appropriate third-country comparison market. 283 F. Supp. 2d at 1344.

Defendant claims that Commerce's selection of Germany as the comparison market complies with the court's order. Defendant argues that its decision to use Germany is supported by the statute, regulations, and its long standing practice. Remand Redetermination at 4-5. First, Defendant claims that 19 U.S.C. § 1677(16) (2000) broadly defines "foreign like product" and thereby allows Commerce the flexibility to determine the most appropriate products for comparison. Id. at 5.

Second, Defendant argues that Commerce's regulations give it the flexibility and authority to select the most appropriate third country for comparison purposes. Id. at 5. In support of its argument, Defendant sets out 19 C.F.R. § 351.404(e) (2000) which states that :

> . . . the Secretary generally will select the third country based on the following criteria:
>
> > (1)     The foreign like product exported to a particular third country is more similar to the subject merchandise exported to the United States than is the foreign like product exported to other third countries;
> >
> > (2)     The volume of sales to a particular third country is larger than the volume of sales to other third countries;

6

(3)      Such other factors as the Secretary considers appropriate.

Commerce claims that it has the authority to select from these criteria because "no hierarchy or priority is assigned to any of these three criteria."[4] Id.

According to Commerce, "[a]t the point when the Department selects a third-country market, there is no information on the record offering model-specific details of the physical characteristics of the merchandise sold in the various markets . . .," and as a result market volume becomes the most readily apparent and measurable indicator of the "likelihood of suitable matches for U.S. sales." Id. at 6-7. Furthermore, Commerce supports its practice on the grounds that, when it does not have full sales data and "two or more markets are suitable for comparison to merchandise sold to the United States," it selects one of the potential markets based upon a preference for size. Defendant's Response to Plaintiff's Comments Concerning the Remand Results in This Case ("Defendant's Response") at 5-6. Defendant explains that it first selects the appropriate comparison market and then conducts a model-specific search for the most comparable foreign like product in the price-to-price analysis. Id. at 5. Defendant continues to support its initial selection of Germany as the comparison market on the basis that "the larger market will generally offer a larger pool of comparable sales transactions, and will have sales of more models, in more months, than smaller volume markets . . . ." Remand Redetermination at 7; See Defendant's Response at 4. Defendant also claims that selecting the larger market does not necessarily mean it did not examine whether there are similar products. Rather, under the provisions of 19 C.F.R. §351.404(e), it is permitted to select the appropriate third country market

---

[4] At oral argument, Defendant claimed that the preamble to Commerce's regulations purposely eliminated the need for a hierarchical analysis in the selection of the third country market.

based upon one of the three criteria, instead of on a specific hierarchy.  Defendant also argues

that "there are many and varied instances of the Department's choosing the largest third-country

market without mention of the degree of similarity of merchandise . . . ."[5] Remand

---

[5] Commerce lists numerous cases to support its position.  Defendant points out that in each instance the market selection remained unchanged from the preliminary results to the final results.  The only review cited which occurred prior to the review at issue is Stainless Steel Plate from Sweden: Preliminary Results of Antidumping Duty Administrative Review, 63 Fed. Reg. 36,877, 36,878 (July 8, 1998); Stainless Steel Plate from Sweden: Final Results of Antidumping Duty Administrative Review, 63 Fed. Reg. 63,706 (Nov. 16, 1998). Remand Redetermination at 8.

All of the remaining reviews cited occurred after the review at issue:

> Notice of Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review and Intent To Revoke Antidumping Duty Order in Part: Certain Pasta From Italy, 66 Fed. Reg. 34414 (June 28, 2001), market selection unchanged in final results, 66 Fed. Reg. 300 (January 3, 2002); Notice of Preliminary Determination of Sales at Less Than Fair Value: Low Enriched Uranium From the United Kingdom; Preliminary Determinations of Sales at Not Less Than Fair Value: Low Enriched Uranium From Germany and the Netherlands; and Postponement of Final Determinations, 66 Fed. Reg. 36748 (July 13, 2001), market selection unchanged in final results, 66 Fed. Reg. 65903 (December 21, 2001); Notice of Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Structural Steel Beams From Luxembourg, 66 Fed. Reg. 67223 (December 28, 2001), market selection unchanged in final results, 67 Fed. Reg. 35488 (May 20, 2002); Stainless Steel Wire Rod From India: Preliminary Results of Antidumping Duty Administrative Review, 67 Fed. Reg. 865 (January 8, 2002), market selection unchanged in final results, 68 Fed. Reg. 26288 (May 15, 2003); Notice of Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Sulfanilic Acid from Portugal, 67 Fed. Reg. 30362 (May 6, 2002), market selection unchanged in final results, 67 Fed. Reg. 60219 (September 25, 2002); Notice of Preliminary Determination of Sales at Less Than Fair Value: Sulfanilic Acid From Hungary, 67 Fed. Reg. 30358 (May 6, 2002), market selection unchanged in final results, 67 Fed. Reg. 60221 (September 25, 2002); Notice of

8

Redetermination at 8.

Finally, Defendant claims that "[w]ithin the context of the antidumping duty order on flanges from India, there is no instance in which the Department stated that it selected a market based on its having more similar merchandise than a larger comparison market." Remand

Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Ferrovanadium from the Republic of South Africa, 67 Fed. Reg. 45083 (July 8, 2002), market selection unchanged in final results, 67 Fed. Reg. 71136 (November 29, 2002); Notice of Preliminary Results of Antidumping Duty Administrative Review, Preliminary Determination To Revoke the Order in Part, and Partial Rescission of Antidumping Duty Administrative Review: Fresh Atlantic Salmon From Chile, 67 Fed. Reg. 51182 (August 7, 2002), market selection unchanged in final results, 68 Fed. Reg. 6878 (February 11, 2003); Certain Forged Stainless Steel Flanges from India: Preliminary Results of Antidumping Duty Administrative Review, 68 Fed. Reg. 1161, 1162-63, (March 10, 2003), and Memorandum from Helen M. Kramer, Team Leader/Senior Analyst and Shireen Pasha, Case Analyst, to the File, Administrative Review of the Antidumping Duty Order on Certain Forged Stainless Steel Flanges from India; Preliminary Results Analysis for Echjay Forgings Pvt. Ltd. ("As Echjay had no sales of the subject merchandise in the home market, we used its sales to its largest third country market, Belgium, to calculate COS adjustments for CV," no change in use of largest third country for circumstances-of-sale adjustment in final results, 68 Fed. Reg. 42005 (July 16, 2003); Certain Polyester Staple Fiber from Korea; Preliminary Results of Antidumping Duty Administrative Review and Partial Rescission of Review, 68 Fed. Reg. 34378, 34380-34381, (June 9, 2003) (market selected was the second largest because the largest market, the European Union, had a dumping order in place), market selection unchanged in final results, 68 Fed. Reg. 59366 (October 15, 2003).

Remand Redetermination at 8-10.

Redetermination at 12.[6]  Defendant maintains that the product sold in both Germany and Canada were comparable to the merchandise sold in the United States and since the volume of sales in Germany were larger, it offered the likelihood of greater contemporaneous matches. Id. at 13.  As a result, the Defendant maintains that its selection of Germany as the comparison market conformed to law and precedent since both potential comparison markets involved sales of like product and any differences in product could be accounted for through normal means. Id. at 13-14.

Plaintiff argues that Commerce's continued use of Germany as the third-country comparison market fails to satisfy the statutory "foreign like product" requirements under 19 U.S.C. § 1677(16) and Commerce's own regulation, 19 C.F.R. § 351.404(e). Plaintiff's Objection at 3-4.  Plaintiff says that the use of Germany as the comparison market is unsupported by substantial evidence; is not in accordance with the law; and is an impermissible and unexplained departure from past precedent.

Plaintiff further argues that Commerce continues to violate its own regulation by essentially reading out the foreign like product provision of 19 C.F.R. § 351.404(e).  Plaintiff says that the merchandise sold to Canada was identical to the merchandise sold in the United States and thus "a fortiori more similar to the flanges Viraj sold to the U.S. than the flanges Viraj

_____

[6]  Defendant cites to the Certain Forged Stainless Steel Flanges from India; Final Results of Antidumping Duty Administrative Review, 61 Fed. Reg. 51,263 (Oct. 1, 1996) (hereinafter "Akai Review"), which it claims is unhelpful to this case, and the subsequent 2000-2001 and 2001-2002 stainless steel flange reviews to support its claim that Commerce selects the third country market with the largest volume and not the market solely based on the most similar merchandise. Remand Redetermination at 12 - 13 (citing Certain Stainless Steel Flanges from India; Final Results of Antidumping Duty Administrative Review, 66 Fed. Reg. 48,244 (Sep. 19, 2001); Certain Forged Stainless Steel Flanges from India: Final Results and Partial Rescission of Antidumping Duty Administrative Review, 68 Fed. Reg. 42,005 (July 16, 2003)).

sold to Germany." Id. at 5 (emphasis in original). According to Plaintiff, Commerce had model-specific data on Canada from the beginning of the review, and only later on in the review did Commerce request model-specific data on Germany. Id. at 6. Viraj argues, as a result, that Commerce "never claim[ed] that the German sales [were] more similar to the U.S. sales than the Canada sales . . . ." Id.

Plaintiff alleges that Commerce's focus on the size of the market as a criteria for selection of the appropriate comparison market is contrary to law. Id. at 7. It states that although "Commerce says that 'quantity was the appropriate basis for determining the comparison market . . . .'" No one factor in the selection of the comparison market is supposed to be dispositive." Id. at 7 (citing Viraj I, 283 F. Supp. 2d at 1340, 1341-42) (internal citations omitted). Plaintiff claims that since Commerce cannot cite to any record evidence that indicates that it could not find comparable sales in Canada to calculate the dumping margin, Commerce's decision is not supported by substantial evidence.

Plaintiff further argues that Commerce cannot disregard the Akai Review that preceded the Viraj review. Plaintiff's Objection at 8. In the Certain Forged Stainless Steel Flanges from India; Final Results of Antidumping Duty Administrative Review, 61 Fed. Reg. 51,623 (Oct. 1, 1996) ("Akai Review"), Commerce selected a smaller third country market because it sold merchandise under the same industry specifications as in the United States. Id. at 8. Furthermore, Viraj claims that the Remand Redetermination cites to no case where a market with "merchandise found to be more similar . . . was rejected for a larger market." Id. It also claims that Commerce's reliance on volume of sales violates its own regulation and statute on the grounds that both say that the "similarity of merchandise sold to the United States must be

11

considered when selecting the appropriate third-country comparison market . . . ." Id. at 9.

Commerce's selection of Germany as the most appropriate comparison market is not supported by substantial evidence. Commerce is incorrect when it argues that there is no hierarchy or structure in the selection of the third country comparison market. Section 1677(16) establishes just such as approach and suggests a hierarchy for how Commerce should conduct its comparisons for model matching. See NSK Ltd. v. United States, 217 F. Supp. 2d 1291, 1300 (CIT 2002). Commerce's regulation, 19 C.F.R. § 351.404(e), provides additional guidance on how to select the most appropriate foreign like product for comparison purposes. This authority to interpret and determine markets and products most appropriate for comparison does not, however, permit Commerce to disregard general and accepted principles of statutory construction.

Section 351.404(e) provides that Commerce may choose a third country market where (1) the foreign like product is more similar to the product sold to the United States than another third country; (2) the volume of sales is greater than that sold to another third country; and (3) any other factors that Commerce considers appropriate. The preamble to Commerce's regulations states that "we believe that § 351.404(e) is sufficiently clear that (1) not all of the three criteria need to be present in order to justify the selection of a particular market, and (2) no single criterion is dispositive." Antidumping Duties; Countervailing Duties, 62 Fed. Reg. 27,296, 27,358 (May 19, 1997). Commerce must thus choose a third country comparison market that meets one or more of these enumerated criteria.

Commerce is incorrect in its argument that the preamble to the regulations establishes no hierarchy in the application of the selection criteria in 19 C.F.R. § 351.404(e). Under general

12

principles and canons of statutory construction, statutes should be read and given their plain meaning to avoid absurd results. NSK Ltd., 217 F. Supp. 2d at 1296; Richard J. Pierce, Jr., Administrative Law Treatise §3.6 (4th ed. 2002)[7]. Extending this logic to the reading of regulations promulgated to interpret the corresponding statute, it follows that absent any specific language in the regulation or its explanatory notes, regulations should also be read logically and according to their plain meaning. Norman J. Singer, Sutherland Statutes and Statutory Construction §31.6, at 722-23 (6th ed. 2002) ("[i]t is obvious, that insasmuch as a regulation is a written instrument the general rules of interpretation apply").

In 19 C.F.R. § 351.404(e), Commerce is first instructed to look to a third country that has a product similar to that sold in the United States, and if this is not feasible, to look to a third country that has a large volume of sales. Only then is Commerce to look to any other factors that it deems appropriate. Id. Given this seriatim instruction, 19 C.F.R. §351.404(e) has a descending hierarchy of criteria from which Commerce must select the appropriate third country comparison market. See, e.g., NSK Ltd., 217 F. Supp. 2d at 1296-97. Here Commerce did not try to work its way through the enumerated hierarchy of the regulation and its failure to do so lead to absurd results.[8] Commerce deviated from the canons of statutory construction and based its third

---

[7] "The question for the court is whether the agency's construction of the language is within the range of meanings that could be plausibly attributed to the relevant statutory language." Administrative Law Treatise §3.6.

[8] For example, if the court were to follow Commerce's reasoning of selecting the appropriate third country based upon the volume of sales without considering the similarity of merchandise sold in both potential comparison markets (as seems to be suggested by Commerce's explanation), then this approach could lead to the comparison of products that are either entirely dissimilar or dissimilar enough that all matches would be based upon constructed value rather than on a price to price basis after adjusting for DIFMER. This would run contrary to the logic of 19 C.F.R. § 351.404(e).

13

country selection on the second enumerated criteria without indicating whether it considered the other enumerated criteria in making its determination. Commerce thus has failed to provide a reasonable explanation of its analysis. This issue is remanded to Commerce to provide a full explanation of its reasoning and the criteria it examined in selecting Germany as the comparison market.

In addition, Commerce's claims of a longstanding practice must be supported by valid evidence. Viraj I, 283 F. Supp. 2d at 1344. By definition, a longstanding practice must have been established prior to the review in issue. The court may not accept a post-hoc rationalization or a subsequent methodology as a reasoned basis for a prior occurring review. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50, 103 S. Ct. 2856, 77 L.Ed. 2d 443 (1983); Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168-69, 83 S. Ct. 239, 9 L. Ed. 2d 207 (1962). As the court stated in Viraj I, Commerce need not "forever hew" to its prior decisions, but it must explain with specificity the reason for its departure from a prior practice. Viraj I, 283 F. Supp. 2d at 1342.

> "An agency is obligated to follow precedent, and if it chooses to change, it must explain why." M.M. & P. Mar. Advancement, Training, Educ. & Safety Program v. Dep't of Comm., 729 F. 2d 748, 755 (Fed. Cir. 1984); see also Atchison, Topeka, & Sante Fe Ry. v. Wichita Bd., 412 U.S. 800, 808, 93 S. Ct. 2367. 37 L. Ed. 2d 350 (1973). "[B]efore a change is made in established policy there should be evidence to show that the change is warranted."

British Steel PLC v. United States, 127 F. 3d 1471, 1475 (Fed. Cir. 1997). Commerce's reliance on cases occurring after the review at hand does not constitute valid precedent to support its methodology. See Usinor v. United States, Slip Op. 02-70 at 30-42, 2002 Ct. Int'l Trade LEXIS 98 (July 19, 2002). Precedent, by definition, must precede that which it is

14

cited to support. "An agency determination must be supported by concurrent agency reasoning and not by post hoc reasoning by the agency or its counsel." Id. at 38-39.

Although Commerce cites to various reviews in its Remand Redetermination that occurred either prior to or contemporaneous with the review at hand, there is not consistency that the methodology used to select the appropriate third country comparison market which would offer evidence of a consistent "longstanding practice." In the Akai Review, Commerce chose Canada as the appropriate third country comparison market based on product similarities rather than the largest available market, Japan. See 61 Fed. Reg. at 51,265.[9] Yet, Commerce claims that "the Department's determination to use Canada rather than Japan does not predetermine the outcome of the market section [sic] in the Viraj review." Remand Redetermination at 17. In Stainless Steel Plate from Sweden: Preliminary Results of Antidumping Duty Administrative Review, 63 Fed. Reg. 36,877 (July 8, 1998), Commerce used the largest market in determining the appropriate third country. In Notice of Final Results and Partial Recission of Antidumping Duty Administrative Review: Canned Pineapple Fruit From Thailand, 63 Fed. Reg. 43,661 (Aug. 14, 1998) and Stainless Steel Plate From Sweden: Notice of Final Results of Antidumping Duty

---

[9] During the Akai Review, the exporter argued against the use of Canada as its third country comparison market. 61 Fed. Reg. at 51,265; see Viraj I, 283 F. Supp. 2d at 1343. The exporter claimed that Japan was the more appropriate comparison market because Japan was the largest of the third country markets available for comparison. Id. Additionally, the exporter wanted Commerce to determine normal value by comparing its sales made to the United States ASTM standard, to sales made to the Japanese Industrial Standards ("JIS"). Akai Review, 61 Fed. Reg. at 51, 265. It reasoned that "the merchandise end use, raw material and process of manufacturing is [sic] same" and the end product in terms of "Dollar per K.G." could be a reasonable comparison methodology. Viraj I, 283 F. Supp. 2d at 1343 (citing Akai Review, 61 Fed. Reg. at 51,263. Ultimately, however, Commerce chose the smaller market, Canada, which had goods made to the similar ASTM standard, and compared the merchandise on a price-per-piece basis rather than engaging in the methodology the exporter proposed.

<u>Administrative Review</u>, 64 Fed. Reg. 61,065 (Nov. 9, 1999), Commerce used both product similarity and largest market in determining the appropriate third country market.  Finally, in <u>Stainless Steel Bar From India; Final Results of Antidumping Duty Administrative Review and New Shipper Review</u>, 63 Fed. Reg. 63,288 (Nov. 12, 1998) and <u>Stainless Steel Bar from India: Preliminary Results of Antidumping Duty Administrative Review and New Shipper Review and Partial Rescission of Administrative Review</u>, 65 Fed. Reg. 48,965 (Aug. 10, 2000), Commerce used the most similar product in a smaller third country comparison market.  Commerce gives no justification for switching among methodologies in selecting the comparison market.  As a result, there is no basis to determine prior binding agency precedent.  Since Commerce has provided no evidence to support its claim of a longstanding practice, this issue is remanded to Commerce to explain its basis for selecting Germany as the most appropriate comparison market.

**B**
**Commerce's Comparison of ASTM Standard Flanges and DIN Standard Flanges is Not Supported by Substantial Evidence**

<u>Viraj I</u> found that Commerce had failed to provide adequate record evidence to explain why it was appropriate to compare ASTM standard flanges and DIN standard flanges. 283 F. Supp. 2d at 1350.  It also determined that Commerce had changed its methodology from previous reviews without adequate explanation. <u>Id.</u> at 1352.

Defendant states that its "selection of Germany as the third country market . . . , and the resultant comparison of ASTM-standard merchandise to DIN-standard models, was consistent with the statute, the regulation, and Department precedent." Remand Redetermination at 18. Commerce disputes Plaintiff's allegation that DIN standard flanges are not comparable to ASTM standard flanges. <u>Id.</u> at 14.  Defendant also claims that, in steel cases, Commerce "regularly

16

compares merchandise of the different standards." Id. at 14. Defendant asserts that as long as there is not greater than a twenty percent difference in the cost of manufacture, product comparisons of differing industrial standards are common. Id. at 16. It further states that ASTM, DIN, JUS, British, and other specifications are within the scope of the order, and as such are comparable products which are suitable for comparison if any or all of the physical characteristic matching criteria (i.e., grade, size, type, rating, and finish) are similar. Id. at 16-17. At oral argument, Defendant stated that it compared ASTM and DIN standard products by grade, type, size, diameter, width, and pressure rating.

Plaintiff alleges that Commerce's Remand results are still not in accordance with law. It claims that the Defendant has failed to explain how the comparison of DIN and ASTM standard flanges satisfy the "foreign like product" requirements for comparability. Plaintiff's Objection at 11. Plaintiff also claims that Commerce's reliance on the 20% DIFMER[10] adjustment is absurd because it failed to apply the test correctly in the current case. Id. at 11-12.

As stated in Viraj I, "Commerce must determine the appropriate 'foreign like product,' in accordance with 19 U.S.C. § 1677(16)(B), and must 'make a fair comparison between the United

---

[10] The antidumping statute provides for an adjustment to normal value for differences in physical characteristics between the foreign like product and the merchandise exported to the United States. See 19 U.S.C. § 1677b(a)(6)(C)(ii). Thus, where the foreign like product is not identical to the subject merchandise, Commerce adjusts normal value for the "difference in cost attributable to the difference in physical characteristics"--the difference in merchandise ("DIFMER") adjustment. See Import Policy Bulletin 92.2 (July 29, 1992) ("Policy Bulletin 92.2"). When the variable cost difference between two products exceeds 20%, Commerce considers that the probable differences in values of the items to be compared are so large that they cannot reasonably be compared. Since the merchandise is not identical, does not have approximately equal commercial value, and has such large differences in commercial value that it cannot reasonably be compared, the merchandise cannot be considered similar under 19 U.S.C. § 1677(16)(A), (B), or (C) of the statute. See Policy Bulletin 92.2.

States price charged for the subject merchandise . . . and the price charged for the corresponding 'foreign like product.'" 283 F. Supp. 2d at 1347 (citing <u>Pesquera Mares Australes Ltda. v. United States</u>, 266 F. 3d 1372, 1375 (Fed. Cir. 2001)).

Pursuant to 19 U.S.C. § 1677,

> (16) the term "foreign like product" means merchandise in the first of the following categories in respect of which a determination for the purposes of part II of this subtitle can be satisfactorily made:
>
> > (A) The subject merchandise and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, that merchandise.
> >
> > (B) Merchandise–
> > > (I) produced in the same country and by the same person as the subject merchandise,
> > >
> > > (ii) like that merchandise in component material or materials and in the purposes for which used, and
> > >
> > > (iii) approximately equal in commercial value to that merchandise.
> >
> > (C) Merchandise–
> > > (I) produced in the same country and by the same person and of the same general class or kind as the subject merchandise,
> > >
> > > (ii) like that merchandise in the purposes for which used, and
> >
> > (iii) which the administering authority determines may reasonably be compared with that merchandise.

The statute requires that Commerce first look for identical merchandise with which to match the United States' model to the comparable home or third country market model.[11] See

_____

[11] The term "identical merchandise" does not require Commerce to make comparisons of merchandise that are "exactly the same," rather Commerce is permitted to compare merchandise

Torrington Co. v. United States, 25 CIT 395, 417 (2001); 19 U.S.C. § 1677(16). If identical merchandise is unavailable, Commerce must look to merchandise under the second category, and, if that is not available, under the third category. Torrington, 25 CIT at 417 (citing 19 U.S.C. § 1677(16)). Whenever possible, Commerce must make an "apples-to-apples" comparison of merchandise to effectuate a fair comparison between the normal value and United States price. See Torrington Co. v. United States, 68 F.3d 1347, 1352-53 (Fed. Cir. 1995).

Thus, "[i]n accordance with this statutory mandate [of 19 U.S.C. § 1677(16)], absent identical merchandise, Commerce must 'choose the most similar merchandise' for comparison." Hussey Copper, Ltd. v. United States, 17 CIT 993, 995 (1993) (quoting Timken Co. v. United States, 10 CIT 86, 96, (1986)). As stated in Viraj I, "[w]hile it is certainly simpler for Commerce to identify and compare identical merchandise when it exists; lacking identical goods for comparison Commerce must find similar merchandise in order to make a proper comparison with the United States imports." 283 F. Supp. 2d at 1347 (citing NTN Bearing Corp. of Am. v. United States, 127 F.3d 1061, 1063 (Fed. Cir. 1997)).

This court has previously found that the lack of interchangeability between products will not defeat a finding of "similar merchandise." See Sony Corp. of America v. United States, 13 CIT 353, 359 (1989). However, Commerce must explain why its comparison of "similar merchandise" is reasonable and appropriate. See Mitsubishi Heavy Indus., Ltd. v. United States, 24 CIT 275, 277 (2000) (citing Ad Hoc Comm. v. United States, 19 CIT 1398, 1401 (1995); NTN Bearing Corp. v. United States, 19 CIT 1221, 1238-39 (1995); Koyo Seiko Co., Ltd. v. United States, 19 CIT 1085, 1091-92 (1995), *aff'd in part, rev'd in part*, 92 F.3d 1162 (Fed. Cir.

that is "the same with minor differences." Pesquera, 266 F. 3d at 1383.

19

1996)).

Viraj I instructed Defendant to explain its basis and reasoning for comparing ASTM and DIN standard flanges and to clarify how it determined that these products made to differing industrial standards were comparable. 283 F. Supp. 2d at 1352. Defendant relies on several reviews occurring both before and after the review at issue to support its claim that comparing products of differing industrial standards is in accordance with agency precedent. Remand Redetermination at 14-15. Defendant also claims that "[d]epending on the specific characteristics of the flanges being compared, a particular model made to DIN standards and sold in a third country market may provide a more suitable comparison, by offering greater similarity in any or all of the physical characteristic matching criteria . . . to a U.S. model than any ASTM model sold in a smaller market." Id. at 16. However, Defendant fails to explain its methodology or the basis upon which it determined that, given the reported sales in the instant case, such a comparison was appropriate. Conclusory[12] statements are insufficient.[13] Commerce has failed to provide a reasonable explanation or adequate support for its conclusion that ASTM flanges and DIN flanges are "similar merchandise" and are therefore comparable. This issue is remanded to Commerce to comply with the "foreign like product" requirement of 19 U.S.C. § 1677(16), and to adequately explain that compliance.

---

[12] Conclusory is defined as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based." Black's Law Dictionary 308 (8th ed. 2004).

[13] An example of a conclusory statement by Commerce appears in the Remand Redetermination at 16 which states "[f]or example a DIN-standard stainless steel thread-on-model with a 3-centimeter diameter would be a better match for a 1-inch ASTM standard stainless steel thread-on model than a 12-inch 'blind' (end-cap) model sold in Canada under ASTM standards would be."

**C**
**Commerce's Calculation of the Antidumping Margin Based on Per Kilogram Prices is in Accordance with the Law**

Viraj I, instructed Commerce to explain its methodology for converting prices to a per kilogram basis in calculating the dumping margin. 283 F. Supp. 2d, at 1354.

Defendant argues that it has a consistent methodology of comparing prices on a per-kilogram basis and therefore its price comparison methodology in this case is in accordance with law. Remand Redetermination at 24. Commerce contends that using per-kilogram prices and expenses is the "least distortive manner of making comparisons among items with varying weights, and that it is not a departure from precedent." Id. at 19.

Commerce asserts that by using a uniform unit of measure and expressing all monetary amounts on a uniform, per-kilogram, basis, it eliminates any potentially distorting effects in comparing two different sized flanges. Id. at 20. Commerce claims that, if it used Plaintiff's approach of comparing products on a per-piece or per-unit basis, every price comparison of products of differing weights would have significant distortions stemming from price adjustments for differently sized items. Id. In support of its argument that the comparisons did not lead to distortions, Defendant states that Plaintiff has "failed to demonstrate that there were any specific inappropriate merchandise comparisons made, nor [is Commerce] aware of any. Defendant's Reply at 9 (citing Remand Redetermination at 35). Defendant also states that Plaintiff's argument that, because finished flanges cost more than rough forgings, Commerce should use a per-piece analysis, is without foundation. Defendant's Reply at 10. Defendant rebuts Plaintiff's assertions on the grounds that any differences between the products would be eliminated by the application of the DIFMER test where physical characteristics cause significant

21

price differences. Id.

Defendant also claims that it is relying on precedent to support its methodology of calculating prices on a per unit of weight rather than a per-piece basis. Remand Redetermination at 21. Defendant cites to a number of non-flange decisions to support its assertion that it was consistent in converting prices and expenses to a per-kilogram basis.[14] Commerce also claims that in all flange orders except those "not involving solely identical models since 1998" it has used per-kilogram pricing as the basis for calculating the dumping margin. Id. at 22.[15] Defendant concedes that in the Akai Review the agency used a per-model approach, but it claims that this review was inapposite to the matter at hand since the agency did not have a proper model-

---

[14] See Remand Redetermination at 21-22 (citing Notice of Final Results of Antidumping Duty Administrative Reviews and Determination Not To Revoke in Part: Certain Corrosion-Resistant Carbon Steel Flat Products and Cut-to-Length Carbon Steel Plate from Canada, 66 Fed. Reg. 3543 (Jan. 16, 2001) (where the Department chose to use weight as the standard unit of measure to determine gross unit price and calculate the dumping margin); Notice of Final Determination of Sales at Less Than Fair Value: Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China, 68 Fed. Reg. 7765 (Feb. 18, 2003); Antidumping Duty Orders: Stainless Steel Butt-Weld Pipe Fittings from Italy, Malaysia, and the Phillipines, 66 Fed. Reg. 11,257 (Feb. 23, 2001) (where the use of per-kilogram monetary amounts was undisputed).

[15] Defendant cites for its assertion Certain Forged Stainless Steel Flanges from India: Final Results of Antidumping Duty New Shipper Review, 63 Fed. Reg. 25,824 (May 11, 1998), and accompanying Memorandum to File; Certain Stainless Steel Flanges From India: Bhansali Ferromet Pvt. Ltd., 66 Fed. Reg. 11, 258 (Feb. 23, 2001) and the corresponding analysis memoranda. Remand Redetermination at 22.

Defendant also cites to three subsequent reviews of stainless steel flanges from India. Specifically, Certain Forged Stainless Steel Flanges From India; Final Results of Antidumping Duty Administrative Review, 67 Fed. Reg. 62,439 (Oct. 7, 2002); Certain Forged Stainless Steel Stainless Steel Flanges From India: Final Results of Antidumping Duty New Shipper Review, 68 Fed. Reg. 351 (Jan. 3, 2003); and Certain Forged Stainless Steel Flanges From India: Final Results and Partial Rescission of Antidumping Duty Administrative Review, 68 Fed. Reg. 42,005 (July 16, 2003). Remand Redetermination at 22-23. Defendant cites these reviews to demonstrate that after the current review, the Department has consistently applied a per-kilogram pricing comparison to calculate the dumping margin.

matching methodology to appropriately calculate the dumping margin.

Plaintiff argues that Commerce's failure to compare prices on a per-piece basis "impermissibly led to the comparison of models in the dumping margin calculation with over a 20% difference in cost per piece." Plaintiff's Objection at 12 (emphasis in original). Plaintiff claims that "Commerce's practice is that models (products) themselves (not a kilogram part thereof) with over a 20% difference in cost should not be compared, because then they no longer have 'the greatest commercial similarity' given differences in the products' physical characteristics (one of which is size) that affect prices for the product." Id. (citing Viraj I, 283 F. Supp. 2d at 1342 n.5, 1350 n.15, 1351 n. 16, 1355.

Plaintiff cites to the Akai Review as an example of an instance where Commerce compared flanges on a per-piece basis and adjusted for any physical differences using DIFMERs, and matching by size without difficulty. Plaintiff's Objection at 13. Furthermore, it claims that Commerce cannot support its explanation that the DIFMER adjustment cannot account for differences between products if comparisons are on a per-piece basis. Id. at 14. Plaintiff also argues that the prices and costs of U.S. ASTM forgings being compared to the German DIN finished flanges are inversely related to weight. Id. As a result, according to Plaintiff, Commerce's reasoning for calculating the dumping margin on a per-kilogram basis is not supported by substantial evidence. Id. at 14-15.

Viraj I instructed Commerce to "conform itself to its prior precedent and compare Plaintiff's merchandise in the manner in which it was sold, or adequately explain its departure and support all of its factual arguments with substantial evidence." 283 F. Supp. 2d at 1353-54. At oral argument, Plaintiff cited to its original reply brief at page 70-72, in which it claims that it

has demonstrated that the Department's calculations led to unreasonable or erroneous matches. Although Plaintiff argues that Commerce's methodology leads to distortions in the calculation of the dumping margin, it has failed to provide proof that the methodology utilized actually led to any distortions. The methodologies relied upon by Commerce in calculating the antidumping margins are presumptively correct when supported by substantial evidence. Thai Pineapple Pub. Co. v. United States, 187 F.3d 1362, 1365 (Fed. Cir. 1999); see also Fujitsu Gen. Ltd. v. United States, 88 F.3d 1034, 1044 (Fed. Cir. 1996).

Review of the methodology described in the Remand Redetermination shows that price comparisons on a per-kilogram basis were supported by substantial evidence. Commerce explained in the Remand Redetermination that it had matched the physical characteristics of the products, then applied the price adjustments uniformly and consistently to ensure that comparisons of models with differing weights did not lead to distortions in the expense adjustments. Remand Redetermination at 20. Commerce has supported its conclusion by providing a reasonable basis for the court to determine that using a per-kilogram approach results in a more precise price-to-price comparison of U.S. sales to the foreign like product. Accordingly, Commerce's explanation of its methodology of converting expenses to a per-kilogram basis is supported by substantial evidence and is in accordance with the law.

**D**
**Commerce's Comparison of ASTM Forgings and DIN Proof Machined and Fully Machined Flanges is Not Supported by Substantial Evidence**

Viraj I remanded this issue to Commerce to provide support for its conclusion that any differences that exist between rough forgings sold in the United States and semi-finished flanges or fully finished flanges sold in Germany were insignificant. 283 F. Supp. 2d at 1350.

24

In its Remand Redetermination, Commerce continues to argue the insignificance of any differences between rough forgings and finished flanges. Remand Redetermination at 24. Defendant states that any differences in physical characteristics or differences in manufacturing costs are adjusted for via the DIFMER cap. See Footnote 10 *infra*; id. at 25. It contends that Plaintiff's argument that these products cannot be compared is at odds with the definition of "like product." Id. Commerce defends its methodology on the grounds that it ensures that comparisons of products are properly made, first seeking to compare flanges of the same finish before comparing prices for rough and finished flanges. Defendant's Reply at 11. Moreover, Commerce claims that it explained that any unreasonable matches would be excluded by the 20% DIFMER test and would not be compared in calculating the dumping margin. Id. Based on these grounds, the Department maintains its view that comparing rough flanges to semi-finished or finished flanges was consistent with the statute, regulations, and practice. Id.

Plaintiff argues that the Remand Redetermination does not demonstrate that rough and finished flanges are comparable. Plaintiff's Objection at 15. Plaintiff asserts that just because many different flanges are produced it "does not demonstrate that rough forgings are comparable to finished flanges." Id. As a result, it says, the Remand Redetermination is still not in accordance with the law or supported by substantial evidence.

Viraj I remanded Commerce's determination and found that the record evidence provided by Plaintiff indicated that Commerce made an erroneous assumption regarding the comparability of rough forgings and proof and fully machined flanges in this review. 283 F. Supp. 2d at 1347. Commerce was instructed that on remand, if it decided to use weight when comparing flanges, it must ensure that it is in fact comparing the most similar products and that its methodology and

25

reasoning comport with its results.

Because of the weight differences between forgings and flanges, the court in Viraj I stated

that:

> If Defendant's claim were accurate, then logically, a heavier forging should cost more per-kilogram than the lighter flange. The record evidence indicates the opposite. Commerce has broad discretion to determine similar merchandise, however, its methodology and reasoning must be supported by substantial record evidence. In this case, Plaintiff claims, and the record evidence suggests, that the value added from machining gives the lighter proof or fully machined flange a higher cost of production on a cost-per-kilogram basis, than the heavier rough forging, even though on a cost-per-piece basis the heavier forging costs more.[16] Therefore, the record evidence indicates that the finish must be more determinative of cost than the weight of the piece.

283 F. Supp. 2d at 1354-1355 (internal citations omitted).

Commerce considers differences in physical characteristics of similar merchandise

pursuant to 19 U.S.C. § 1677b(a)(6)(C)(ii) and 19 C.F.R. § 351.411.  For that reason, Viraj I, did

not hold that Commerce may not make weight comparisons of flanges and forgings.  Instead it

required on remand, if Commerce decided to use weight, it must ensure that it was in fact

comparing the most similar products and that its methodology and reasoning comport with its

---

[16] In Viraj I, Plaintiff explained in its supplemental answers that where grade, size, and type are the same, the following effect occurs for the same flange with different finishes:

| Finish of Flange | Weight Per Piece | $ Price per Piece | $ Price Per Kilogram |
|---|---|---|---|
| 1. Rough | 7.100 kg. | $16.29 | $ 2.294 |
| 2. Proof-Machined | 6.500 kg. | $15.27 | $ 2.349 |
| 3. Fully-Finished | 5.200 kg. | $15.72 | $ 3.023 |

283 F. Supp. 2d at 1355 n.19

Therefore, Plaintiff claimed that the price of the product was not more correlative with weight, as Commerce claimed, but rather with finish. Id.

results. Viraj I, 283 F. Supp. 2d at 1357.

Commerce has again failed to provide adequate reasoning to support its methodology and show that it is properly comparing the most similar products. Commerce seeks to explain its reasoning for comparing ASTM forgings and DIN finished and semi-finished flanges by arguing that any differences in these two products will be accounted for via the DIFMER adjustment. Remand Redetermination at 25. Mere reference to Commerce's DIFMER methodology and the principles behind the DIFMER calculation are not sufficient to explain the issues at hand. The issue is whether rough forgings are comparable based upon physical characteristics to finished and semi-finished flanges and how Commerce concluded that they are in fact comparable. As a result, Commerce's comparison of ASTM standard forgings to DIN standard finished flanges is not supported by substantial evidence and is not in accordance with the law. This issue is remanded to Commerce for a final opportunity to explain its methodology and how it adjusted for differences that result from comparing products of different industrial standards, weight, size, and finish, and why this comparison did not lead to distortions in calculating the dumping margin. If Defendant is unable or unwilling to do that it should say so.

# V

## Conclusion

For the reasons stated above, this Remand Redetermination is partially affirmed and partially remanded for action consistent with this opinion.

_____
Evan J. Wallach, Judge

Date:   December 9, 2004
         New York, New York